## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| PARTNERS IN NEIGHBORHOOD GROWTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 2:11-CV-1735-SLB |
| | ) |
| DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; HOUSING AUTHORITY FOR THE BIRMINGHAM DISTRICT, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Renewed Motions to Dismiss, (docs. 53, 56),[1] and plaintiff's Notice of Appeal of HUD's and HABD's Denial of Plaintiff's 11-03 and 11-09 Bid Protests and Motion for Leave to Amend Complaint to Add Formal Bid Protest Review, (doc. 49). Plaintiff, Partners in Neighborhood Growth (PING), has sued defendants, Housing Authority of the Birmingham District (HABD) and the United States Department of Housing and Urban Development (HUD), alleging claims arising out of PING's unsuccessful bids to run community centers at HABD housing projects. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that HABD's Renewed Motion to Dismiss, (doc. 53),

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

is due to be granted in part and denied in part; HUD's Renewed Motion to Dismiss Plaintiff's

Second Amended Complaint, (doc. 56), is due to be granted, and PING's Notice of Appeal

of HUD's and HABD's Denial of Plaintiff's 11-03 and 11-09 Bid Protests and Motion for

Leave to Amend Complaint to Add Formal Bid Protest Review, (doc. 49), is due to be

denied.

## I. MOTIONS TO DISMISS

### A.  STANDARD OF REVIEW

Defendants have moved to dismiss PING's Second Amended Complaint for failure

to state a claim upon which relief can be granted; HUD also asks the court to dismiss PING's

Second Amended Complaint based on the lack of subject-matter jurisdiction.

### 1.  Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a party may move the court to dismiss a case if the

court lacks jurisdiction over the subject matter of the case.  PING, as the party invoking

jurisdiction, bears the burden of establishing the court's subject matter jurisdiction.  *Taylor*

*v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial

attacks and factual attacks.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990);

*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982).  "'Facial attacks' on the

complaint require the court merely to look and see if the plaintiff has sufficiently alleged a

basis of subject matter jurisdiction, and the allegations in his complaint are taken as true."

*McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)(quoting *Lawrence*, 919 F.2d at 1528-29). Therefore, "when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). "Factual attacks, on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Cook Oil Co., Inc. v. United States*, 919 F. Supp. 1556, 1559 (M.D. Ala. 1996)(quoting *Lawrence*, 919 F.2d at 1529).

### 2. Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss for failure to state a claim, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of the plaintiff's statement of a claim for relief. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997). "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)(internal citations and quotations omitted). The allegations in the Complaint are accepted as true and are construed in the light most favorable to plaintiff. *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)(quoting *Am. Dental Ass'n*, 605 F.3d at 1288). To survive a 12(b)(6) motion to

dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)))(internal quotations omitted). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))(internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009)("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Also, the court does not assume that plaintiff can prove facts it has not alleged or that defendants have violated the law in ways that have not been alleged. *Id.* at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010)(quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252,

1261 (11th Cir. 2009)(quoting *Twombly*, 550 U.S. at 570))(internal quotations omitted). "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).[2]

## B. STATEMENT OF FACTS

On May 26, 2011, PING filed a complaint against HABD, alleging violations of the Freedom of Information Act ["FOIA"] and Alabama's Open Records Act.[3]  (Doc. 1.)  A month later it filed an Amended Complaint, adding HUD as a defendant.  (Doc. 6.) Thereafter, PING filed a bid protest with HUD on or about July 2, 2011.  (Doc. 49-1 at 4.) While its bid protest was pending, on September 22, 2011, PING filed its Second Amended Complaint, adding § 1983 claims against defendants alleging violations of the Equal Protection Clause and the Due Process Clause.  (Doc. 43.)

PING's Second Amended Complaint contains the following facts, which the court assumes are true:

---

[2]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[3]When PING filed this case, it was assigned to Senior Judge William Acker. (*See* doc. 1.)  The case was reassigned to the undersigned on January 4, 2012.  (Doc. 52.)

4.  PING, along with several other agencies, submitted a bid to the defendant HABD for Provision of Community Center Services (Bid # 11-03) on or around June 2010.  No bid was awarded for reasons unknown to PING. . . .

5.  Additionally, PING, along with several other agencies, submitted a bid to the defendant HABD for Provision of Community Center Services (Bid # 11-09) on or around December 2010.

6.  TR McCoy's bid was deficient in the following ways and these material deficiencies were **waived** by HABD and HUD against TR McCoy but were enforced against all other bidders, including the plaintiff:

i.  The likelihood that McCoy is was relying on contract amendments or change orders to satisfy its contractual obligations in said bid amounted to a material deficiency; and

ii.  Errors in the scoring and calculation of the bid which improperly represented that both McCoy and PING having <u>identical scores</u> bid (87 Points) when, in fact, PING had the highest score was a material deficiency; and

iii.  The unreasonably low bid of McCoy made said bid deficient and irresponsible;[4] and

iv.  The likelihood of improper influence upon the bid by the following conduct alleged by Ms. Irene Johnson and/or supported by public:

– Ms. Johnson's claim that Resident Council Presidents and their families were offered jobs by Ronald Mitchell, Director of T.R. McCoy, even prior to the award of the contract.

– Ms. Johnson's allegation that Ronald Mitchell made the statement that he "underbid" the contract and his "pre-bid and pre-contract award" statement that Ms. Truman, Executive

---

[4]McCoy underbid PING by more than $580,000.  (Doc. 49-1 at 7.)

Director of HABD, offered to pay for supplies, services and other equipment.

v. The following pre-bid deficiencies with the McCoy organization and related to its operations of three (3) community centers for HABD and three (3) Summer Camp[s]. Namely, McCoy's:

- Inability to keep the facilities opens at least 8 hours per day.
- Staffing facilities with inexperienced, part-time workers, offering no benefits
- Failure to purchase equipment (e.g. no computers or printers, no sports uniforms, etc.)
- Complaints of unsanitary facilities. (e.g. HABD's recently cleaned the Southtown Site for the McCoy Agency after numerous complaints).
- Complaint of sexual molestation of a child by a former employee who was later dismissed.
- Lack of transportation (e.g. the RFP requires at least adequate transportation)
- Long delays in paying staff during Summer Day Camp Program
- Lack of a business address or web presence or business telephone
- Lack of a track record of significant accomplishments
- Payroll irregularities (e.g. late issuance of W-2, etc.)
- Lack of a functioning board and misrepresentation of board members during bid process
- Absence of a Certificate of Corporate Resolution in bid application
- Errors in calculating bid award scores by HABD
- Conflict of interest arising from rides offered to sitting HABD board member Debra Ford by McCoy during time when bid request was pending
- Alleged McCoy board member Wayman Shiver's assertion that he knows nothing about the McCoy bid award or board meetings relating to the McCoy organization even though he is listed as Chairman of the TR McCoy board

7

- IRS 990 forms which demonstrate that McCoy has minimal to no assets and which were not filed until after it was an HABD contractor.

In spite of the above, the bid was awarded to TR McCoy, Inc. and there is a pending challenge to this bid.

. . .

8.  On several occasions, namely, May 2, 2011, March 9, 2011, March 20, 2011, April 19, 2011 and August 31, 2011, PING requested a copy of the bid files and related documents from HABD and/or HUD for the 11-03 and 11-09 bids and other information.[5]  To date, the defendants have unlawfully, arbitrarily and capriciously refused to produce any documents related to the

---

[5]The court notes that HUD has submitted evidence that PING did not request any documents from HUD until after it added HUD as a defendant to its FOIA claim in June 2011.  (Doc. 24-9 at 2.)  Attached to its Motion to Dismiss, (doc. 24), HUD has submitted a letter to PING's attorney from Hollis N. Wormsby, HUD's FOIA Liason Officer, which states:

> This letter is to clarify our letter dated July 8, 2011 which was sent in response to **your [FOIA] request dated July 2, 2011.  The documents provided were all the documents in the Birmingham Field Office related to the referenced procurement of a contract for procurement of community services by [HABD] (RFP No. 11-03 and RFP No. 11-09).  We have no documents related to RFP No. 11-03 other than those included in our response**.  These documents were attachments to the letter from Mr. Frank Horn to Mr. R. Edmond Sprayberry.  We have no documents related to the investigation conducted by Ms. Gayle Gratton.  The HABD is a separate legal entity from HUD, incorporated under state law and constitutes a public body and a body corporate.  Procurements by HABD are conducted on their own behalf.  HABD, and not HUD, conducted the hearing(s) on the bid protest.

(*Id.*)  Unless PING has some evidence that the facts are different than those set forth in this letter, it has no FOIA claim against HUD.  However, for purposes of deciding HUD's Motion to Dismiss, the court has not considered facts other than those alleged in PING's Second Amended Complaint.

11-03 bid and has failed to certify whether it has produced all documents related to the 11-09 bid.

9.  The plaintiff has certain rights to information by virtue of its status as a bidder, from procedural rights guaranteed bidders in HABD and HUD Handbooks governing procurement (a copy of which handbook excerpts and circular is attached and incorporated), from [24] C.F. R. 85.36 and from federal and state regulations identified in the RFP and in this complaint.  These rights include a bidder/protestor's (1) right to review documents after an adverse bid decision found in *Section 6.2 of the HABD Statement of Procurement and in federal regulations governing HUD*, (2) right to review of bid found in the HUD Handbook and in the HABD Statement of Procurement and (3) right to notice of appeal and to appeal found in the HUD Handbook and in the HABD Statement of Procurement.

10.  Furthermore, HABD and HUD have no discretion and must award contract to lowest responsible bidder.

11.  In the instant case HUD and HABD awarded said contract to someone other than the lowest responsible bidder, HUD and HABD waived bid requirements and HABD intentionally manipulated rankings to make it appear that McCoy was the lowest responsible bidder.  At the same time, the defendants strictly enforced said bid requirements against plaintiff and to plaintiff's detriment.  Hence, the plaintiff was treated differently in violation of the equal protection guarantees of the U.S. Constitution.

12.  HABD & HUD ratified the above obstructionist, arbitrary and capricious acts of HABD and HUD officials, including, but not limited to, the acts of:

   a.  Ms. Naomi Truman, Director of HABD, the HABD Board and Ronald Williams, Contract Compliance Counsel, in arbitrarily, capriciously and illegally denying the plaintiff a Constitutionally acceptable bid protest process and access to public documents. Specifically, Ms. Truman oversaw the bid protest proceedings in spite of a clear conflict of interest.  Additionally, Ms. Truman, Mr. Williams and the HABD Board selected a biased bid protest investigator from Sirote and Permutt, a firm that previously represented HABD, intentionally failed to notify the plaintiff of HABD's final decision and appeal rights and threatened, harassed and intimidated the plaintiff for

exercising its right to contest said bid. Therefore, these acts constitute the policy of HABD and HUD.

b. Mr. Ed Sprayberry, director of Public Housing, HUD employees and Ms. Cindy Yarbrough, former Director of Alabama HUD Office, in arbitrarily, capriciously and illegally denying the plaintiff a Constitutionally acceptable bid protest process. Specifically, they intentionally delayed the review process and refused to recognize the plaintiff's right to review. Additionally, they ratified and approved the contract of McCoy with knowledge of its multiple bid deficiencies. Therefore, these acts constitute the policy of HUD.

(Doc. 43 ¶¶ 4-6, 8-12 [emphasis in original; footnotes added].)

Plaintiff's Second Amended Complaint contains the following claims:

Count One – Violation of the Freedom of Information Act against HUD and HABD;

Count Two – Violation of Alabama's Open Records Act against HABD;

Count Three – Violations of § 1983 against HUD and HABD, including procedural and substantive due process and equal protection violations.

(Doc. 43.) As subclaims under Count Three, PING asserts a claim for "Arbitrary & Capricious/Actions Exceeding Defendants' Authority and Discretion," (*id*. ¶ 24), and a claim for a declaratory judgment, (*id*. ¶ 25.)

After PING filed its Second Amended Complaint, defendants filed motions to dismiss PING's Second Amended Complaint. (*See* docs. 44 and 45.) The court informed the parties that it had "decided to delay ruling on the motions to dismiss until PING's current appeal to HUD [had been] decided." (Doc. 47.)

On or about December 22, 2011, HUD issued a report finding "no evidence to support and/or corroborate any of the allegations subject to HUD review." (Doc. 49-1 at 1.) As part of its findings, HUD stated:

> ### Background of Current Procurement, Protest and Request for HUD Review
> ### RFP 11-03
>
> On August 3, 2010. HABD issued RFP 11-03 soliciting proposals to operate and provide services at 12 community centers located in HABD hosing developments. Bidders could propose to operate one or more community centers. Six (6) proposals were received and rated. Based on these ratings HABD determined that four proposals were rated within the previously determined competitive range. Two (2) of the vendors – Mission Birmingham and A.G. Gaston Boys and Girls Club – submitted a proposal for services at only two (2) centers, McCoy submitted to provide services at nine (9) centers, and PING submitted to provide services at 12 centers.
>
> The Evaluation Committee then requested best and final proposals from the four vendors who scored within the competitive range. Only T.R. McCoy submitted any change in proposed costs. Mission Birmingham did not change their price but said they were adding Chaplain Services. The Evaluation Committee agreed that they would recommend contracting with the lowest price responsible bidder within the competitive range. This was consistent with their practice . . . . At the same time, HABD was preparing a HOPE VI proposal to redevelop the Loveman Village housing development. The proposal included expanded community services at the Loveman Village site, and so the HABD staff decided they would not recommend awarding a contract for community services at Loveman Village at that time.
>
> The result was that the Procurement Administrator drafted a Recommendation for Board Action that recommended that Mission Birmingham be awarded contracts at the two (2) sites where [it was] the lowest bidder, PING be awarded contracts at the two (2) sites where [it was] the lowest bidder, and T.R. McCoy be awarded contracts for the seven (7) sites where [it was] the lowest bidder. However, when the recommendation was submitted to HABD Executive Director and Contracting Officer Naomi Truman for approval prior to submission to the HABD Board of Commissioners, she raised two issues. The first was that Chaplin Services had

11

not been included in the RFP scope of work and could not be paid for with Federal funds.  The second was that two long term vendors, A.G. Gaston Boys and Girls Club and PING, had not responded to the opportunity to provide a Best and Final Offer.  The result was that A.G. Gaston would not be awarded any contract and that PING would be reduced from seven (7) centers to two(2).  In order to make sure that everyone had a full opportunity to present their best proposal, she requested that a solicitation for **final** best and final offers be iossued to all four vendors.  This second request for Best and Final offers is specifically allowed for in the HUD Procurement Handbook. . . .  Neither PING nor A.G. Gaston Boys and Girls Club chose to submit offers in response.  Mission Birmingham deleted the offer of Chaplin Services, but kept their proposed price the same.  T.R. McCoy reduced its proposed cost for services at three (3) sites.  Based on the results of this solicitation,  T.R. McCoy would have been awarded contracts for nine (9) community centers and PING would have received a contract fro two (2) sites.  PING was also the low bidder for Loveman Village, but, as already noted HABD staff had decided not to recommend moving froward with a [contract] at this site due to the proposed HOPE VI proposal.

Before this new Recommendation for Board Action could be prepared for their November 8, 2010 meeting, however, a member of the HABD Board of Commissioners called Ms. Truman with information about the possibility that another Board member was inappropriately involved with one of the proposed vendors.  Accordingly, this allegation was discussed in Executive Session by the Board of Commissioners at their next regular Board meeting, which was held on November 8, 2010.  Subsequently, the Board passed a resolution authorizing the Executive Director to reject all proposals, extend the current contracts for 90 days, and reissue the RFP for community center services.

The HABD hired an attorney to conduct the investigation.  The investigator was unable to identify the people who were the original source of the allegation, but did interview all people who had been involved in the procurement process for RFP 11-03, including two (2) commissioners.  None of the interviews suggested that the rating or offering had been conducted in an unusual, inappropriate or illegal manner.  The result was that the investigator concluded that there was insufficient evidence to support any action in response to the allegation.

*RFP 11-09*

On December 17, 2010, HABD reissued an RFP for community center services at one or more twelve (12) HABD housing developments (RFP-11-09). Although there were several minor changes, the RFP was substantially the same except for the fact that HABD was asking for proposals covering 12 months with an option to renew for an additional 12 months instead of the 24 months contract period stated in the earlier RFP (11-03). Seven (7) proposals were received. Based on the ratings of the three raters, the Evaluation Committee used a standardized matrix for establishing a competitive range and determined that four vendors were within that competitive range, PING, T.R. McCoy, A.G. Gaston Boys and Girls Club, and Mission Birmingham. These four vendors were asked to submit best and final offers. Only T.R. McCoy submitted a best and final offer. Its proposed costs were lower than any other bidder for every site. The Executive Director reported that HABD staff discussed whether T.R. McCoy was capable of providing the required services at the specified costs. They based their determination on T.R. McCoy's previous performance and a close examination of T.R. McCoy's proposed expenses for the specified services.

A Recommendation for Board Action was prepared and approved for submission to the HABD Board of Commissioners at its February meeting. On February 28, 2011, the HABD Board of Commissioners voted to accept the recommendation and voted to award a contract to T.R. McCoy for the operation of all 12 community centers. Two (2) community leaders at the meeting Ms. Maralyn Mosley and Ms. Irene Johnson, objected to the Board's decision. Ms. Mosley contended that Commissioner Debra Ford should not have voted on the award because on at least one occasion she had accepted transportation from the president of T.R. McCoy Ronald Mitchell. Ms. Johnson objected that T.R. McCoy was not a responsible bidder based on her experience with their operations.

(Doc. 49-1 at 2-4 [footnotes omitted; emphasis in original].)[6]  Based on its review, HUD

concluded:

---

[6]The court sets forth these findings as a background placing PING's factual allegations in a historical context. However, the court has not assumed these facts are true or relied on these facts to decide the pending Motions to Dismiss.

Because of the seriousness of some of PING's allegations – fraud. conspiracy, conflict of interest, etc. – HUD conducted a full review of all of PING's allegations.  This included review of extensive submissions by both PING and HABD, as well as one site review interviews and the review of relevant documents.  In this process HABD provided HUD with access to all documents and personnel requested by HUD.  HUD found no evidence to support and/or corroborate any of the allegations subject to HUD review. HUD's extensive review also included consideration of those allegations beyond the scope of a HUD bid protest review.  In those case, HUD found no substantial violation of housing authority policies and procedures.  While we under PING is upset that after its long years of successful service it did not receive a single contract, we find no reason for this result other than the fact that PING had been outbid by a competitor whose proposal was determined to provide a significantly greater value to HABD.

Accordingly, based on our review we have found no reason to overturn HABD's award under RFP 11-09, and find no basis for acting on PING's requests for relief.

(Doc. 49-1 at 14-15.)

After HUD's decision, defendants' renewed their Motions to Dismiss.  (Docs. 53 and 56.)

## C.  DISCUSSION

Defendants ask the court to dismiss PING's claims against them.  PING alleges that HABD violated Alabama's Open Records Act, defendants violated FOIA, and defendants violated PING's due process and equal protection rights.  For the reasons set forth below, the court finds that PING's claims are due to be dismissed.

### 1.  FOIA Claims

#### a.  HABD

14

The Freedom of Information Act [FOIA] was enacted as "a revision of § 3, the public disclosure section, of the Administrative Procedure Act, 5 U.S.C. § 1002 (1964 ed.)." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 79 (1973), *superseded by statute in non-pertinent part as stated in N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 226 (1978). The Act "accords 'any person' a right to request any records held by a ***federal agency***." *Taylor v. Sturgell*, 553 U.S. 880, 885 (2008) (quoting 5 U.S.C. § 552(a)(3)(A)) (emphasis added); ; *see also Milner v. Department of Navy*, 131 S. Ct. 1259, 1261-62 (2011)(Subject to certain exemptions, "The Freedom of Information Act (FOIA) requires ***federal agencies*** to make Government records available to the public . . . ." (citing 5 U.S.C. § 522))(emphasis added); *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221 (1978)("[U]nless the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of ***federal agencies*** be made available on demand to any member of the general public.")(emphasis added). FOIA does not apply to state or local government agencies or individuals. *Pennyfeather v. Tessler*, 431 F.3d 54, 56 and n.1 (2d Cir. 2005)(citing, *inter alia*, 5 U.S.C. §§ 551(1) and 552(f)), *cited in Study v. United States*, No. 3:08cv493/MCR/EMT, 2010 WL 1257655, *4 (N.D. Fla. March 4, 2010); *see also Ferguson v. Alabama Criminal Justice Information Center*, 962 F. Supp. 1446, 1447 (M.D. Ala. 1997)(citing, *inter alia*, 5 U.S.C. § 551(1)("Agency means each authority of the government of the United States . . . .")).

According to Alabama law, "a Housing Authority[, such as HABD,] is an administrative agency of a city and performs city functions." *Roberts v. Fredrick*, 328 So. 2d 277, 279 (Ala. 1976)(citing *In re Opinions of the Justices*, 179 So. 535, 536 (Ala. 1938)("The Housing Authority is to be a corporation brought into existence upon the order of a city government, public in nature, and charged with the duty of performing an important element of the police power of the city under whose sanction it shall come into existence.")). Because HABD is not a "federal agency," it is not subject to FOIA.

As an attempt to circumvent FOIA's limitation to federal agencies, PING contends that HABD is an "agent" of HUD and, as such is subject to FOIA.   (Doc. 43 ¶ 2.) Specifically, it alleges that HABD "at all times relevant hereto was acting by and on behalf of and as a ***procurement agent*** of the U.S. Department of Housing & Urban Development (HUD)."  (*Id*. [emphasis added].)  However, "a local authority does not become an agent of the federal government due to a federal agency's control and supervision of grant funds." *Blaze Const., Inc. v. United States*, 27 Fed. Cl. 646, 652 (Fed. Cl. 1993)(citing *D.R. Smalley & Sons, Inc. v. United States*, 372 F.2d 505, 507-08, *cert. denied*, 389 U.S. 835, (1967)).

> . . . "[G]rants of federal funds generally do not . . . serve to convert the acts of the recipient from private acts to governmental acts absent extensive, detailed, and virtually day-to-day supervision." *Forsham v. Harris*, 445 U.S. 169, 180 (1980); see also *id*., at 180, n.11 ("Before characterizing an entity as 'federal' for some purpose, this Court has required a threshold showing of substantial federal supervision of the private activities, and not just the exercise of regulatory authority necessary to assure compliance with the goals of the federal grant"); *United States v. Orleans*, supra, 425 U.S. [807], at 815 [(1976)].

*Dixson v. United States*,  465 U.S. 482, 509 (1984)(parallel citations omitted).

Without any specific factual allegations of HUD's "extensive, detailed, and virtually day-to-day supervision" of HABD, PING's conclusory allegation that HABD is HUD's "procurement agent" is insufficient to support PING's claim against HABD for violations of FOIA.  Whether or not HABD is HUD's agent is a legal conclusion that the court is not bound to assume is true.  *See Day v. Taylor*, 400 F.3d 1272, 1277 (11th Cir. 2005); *Ellis v. Celebrity Cruises, Inc.*, No. 10-20541-CIV, 2010 WL 6730808, *1 (S.D. Fla. July 15, 2010). This court is "not bound to accept as true a legal conclusion [such as agency] couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010).

The factual allegations in PING's  Second Amended Complaint are not sufficient to "nudge" PING'S FOIA claim against HABD "across the line from conceivable to plausible." *Jacobs*, 626 F.3d at 1333.   Therefore, HABD's Motion to Dismiss Count One of PING's Second Amended Complaint will be granted.

### b.  HUD

HUD contends that plaintiff's FOIA claim against it is due to be dismissed based on a lack of jurisdiction because PING has not alleged that it exhausted its administrative remedies prior to filing its Complaint against HUD.  HUD has produced evidence to support its assertion that, as a matter of fact, PING has failed to exhaust its administrative remedies. It contends that this court can consider its affidavits because the court lacks jurisdiction to

consider a FOIA claim if the plaintiff fails to exhaust its administrative remedies under FOIA.  The court disagrees.

Failure to exhaust administrative remedies under FOIA does not deprive this court of subject-matter jurisdiction.  "FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts."  *Taylor v. Appleton*, 30 F.3d 1365, 1367 (1994), *quoted in Thompson v. U.S. Marine Corp.*, 398 Fed. Appx. 532, 534 (11th Cir. 2010).  "Exhaustion of administrative remedies is not a jurisdictional requirement, but 'performs a function similar to the judicial doctrine of ripeness by postponing judicial review.'"  *Thompson*, 398 Fed.  Appx. at 535 (quoting *Taylor*, 30 F.3d at 1367 n.3 (citing *Dresser Industries, Inc. v. United States*, 596 F.2d 1231, 1238 (5th Cir. 1979))).  Therefore, dismissal for failure to exhaust administrative remedies is proper under Fed. R. Civ. P. 12(b)(6), and not Fed. R. Civ. P. 12(b)(1).  *Id*.

PING does not allege with specificity the records it has requested and/or received from HUD,[7] or, that, following the denial of its FOIA requests to HUD, it appealed the decision.[8]  The court finds these failures are fatal to PING's FOIA claim against HUD.

---

[7]The evidence indicates that HUD has fully complied with its obligations under FOIA. (*See*, *e.g.*, doc. 24-9.)

[8]PING filed a bid protest with HUD but nothing in the resulting decision indicates that PING was protesting a failure to produce documents under FOIA.  (*See generally* doc. 49-1.) PING's Second Amended Complaint does not indicate that PING has exhausted available administrative remedies prior to filing its First Amended Complaint, adding HUD as a defendant to its FOIA claim, or its Second Amended Complaint.  (*See* docs. 6, 43.)

Therefore, HUD's Motion to Dismiss Count One of PING's Second Amended Complaint will be granted.

The court notes that PING shall be given leave to file an Amended Complaint that properly alleges a FOIA claim against HUD.  However, in accordance with Rule 11 of the Federal Rules of Civil Procedure, PING can only allege such a claim if it is supported by the facts.[9]  HUD has submitted evidence that PING did not submit a FOIA request to HUD until after filing this case, that HUD has responded fully to the request, and that PING did not

---

[9]Rule 11(b) provides:

By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

appeal.[10]  If these facts are true, any refiling of the FOIA claim against HUD would violate Rule 11 and subject PING'S counsel to sanctions.

### 2. Section 1983 Claims

#### a. HUD

Section 1983 does not apply to federal actors or agencies.  *Hindman v. Healy*, 278 Fed. Appx. 893, 895 (11th Cir. 2008)(citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994); *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971))(unpublished).[11]  Therefore, plaintiff's § 1983 claims against HUD are due to be dismissed.

#### b. HABD

##### i. Procedural Due Process

The Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. 14, § 1.  "This Clause imposes procedural limitations on a State's power to

---

[10]The court has not considered this evidence for purposes of determining whether PING's Second Amended Complaint states a claim for relief.

[11]*Bivens* established a type of action, similar to that authorized against state actors by 42 U.S.C. 1983, against federal actors.  "In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971), the Supreme Court held that a plaintiff could state a cause of action and recover money damages against a federal official for constitutional violations occurring under the color of federal law.  A *Bivens* action is only permitted where 1) the petitioner has no alternative means of obtaining redress, and 2) there are no special factors counseling hesitation." *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998)(internal quotations and citations omitted).  A *Bivens* claims against a federal agency is a frivolous claim. *See King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005).

take away protected *entitlements*." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, ____, 129 S. Ct. 2308, 2319 (2009)(citing *Jones v. Flowers*, 547 U.S. 220, 226-39 (2006))(emphasis added); *see also Weaver v. Graham*, 450 U.S. 24, 30 (1981)("The Due Process Clause "solely protect[s] pre-existing [or vested] entitlements.").

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements:  (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)(citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).  "[A]t a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Id*. (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  "The lack of a meaningful opportunity to be heard is at the core of a due process claim because the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *National Ass'n of Boards of Pharmacy v. Board of Regents of the University System of Georgia*, 633 F.3d 1297, 1316-17 (11th Cir. 2011)(quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting Parratt v. Taylor, 451 U.S. 527, 537 (1981)))(emphasis and internal quotations omitted).

21

### A. Deprivation of a Constitutionally-Protected Interest

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "In assessing a claim based on an alleged denial of procedural due process a court must first decide whether the complaining party has been deprived of a constitutionally protected liberty or property interest. Absent such a deprivation, there can be no denial of due process." *Economic Development Corp. of Dade County, Inc. v. Stierheim*, 782 F.2d 952, 953-54 (11th Cir. 1986)(citation omitted). Whether PING has a constitutionally-protected property or liberty interest at stake is a question of law. *See Key West Harbour Development Corp. v. City of Key West*, 987 F.2d 723, 727 (11th Cir. 1993)

The Supreme Court has held:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a ***legitimate claim of entitlement*** to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Such entitlements are "'of course, . . . not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Paul v. Davis*, 424 U.S. 693, 709 (1976)(quoting *Roth*, *supra*, at 577); *see also Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998).

> . . .

> Our cases recognize that ***a benefit is not a protected entitlement if government officials may grant or deny it in their discretion***. *See*, *e.g.*, *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462-463 (1989).

*Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)(emphasis added).

HABD contends that "the property interest that PING claims to be entitled to is in a state-created contract." (Doc. 44 at 11.)  PING's Second Amended Complaint is not so clear.

The court assumes that PING has alleged it was deprived of its property interest in being awarded the contract for the community centers[12] because it was the lowest responsible bidder, and a property interest in the requested documents.

The court finds that the awarding of the competitive-bid contract was a matter within the discretion of HABD, and, therefore, it does not constitute a constitutionally-protected property interest.  HUD regulations provide, "When procuring property and services under a grant, a State will follow the same policies and procedures it uses for procurements from its non-Federal funds," and other "[g]rantees and subgrantees will use their own procurement procedures which reflect applicable State and local laws and regulations, provided that the procurements conform to applicable Federal law and the standards identified in this section."

---

[12]PING's only mention of a liberty interest is in its substantive due process claim, wherein it alleges,

> The plaintiff has a property and liberty right in the HABD contract that was unlawfully awarded to McCoy as HABD has no discretion and must award contract to lowest responsible bidder per state and federal law cited herein, namely, 24 [C.F.R. §] 85.36, et. seq. and Alabama Code § 41-16-20, et. seq.  The plaintiff was the lowest responsible bidder.  Consequently, the defendants' award and ratification of said contract to McCoy was a violation of the plaintiff's substantive due process rights.

(Doc. 43 ¶ 22.)  The court finds that this conclusory blurb does not identify any constitutional liberty interest.

24 C.F.R. § 85.36.  In Alabama, "When letting contracts covered by the Competitive Bid Law, public agencies have discretion to determine who is the lowest responsible bidder." *Vinson Guard Service, Inc. v. Retirement Systems of Alabama*, 836 So.2d 807, 810 (Ala. 2002)(quoting *Crest Const. Corp. v. Shelby County Bd. of Educ.*, 612 So. 2d 425, 429 (Ala.,1992))(internal quotations omitted).  "The [Alabama] Competitive Bid Law does not require that the lowest bid be accepted but only that the officials charged with the responsibility of determining the lowest responsible bid act in good faith." *Crest Const.*, 612 So. 2d 429 (internal quotations and citations omitted); *see also Urban Sanitation Corp. v. City of Pell City*, 662 F. Supp. 1041, 1046 (N.D. Ala. 1986).

In reviewing PING's bid protest, HUD specifically noted that determining the responsibility of a bidder is within the discretion of HABD.  (Doc. 49-1 at 6-7.)  This finding is support by section 2.2.5 of HABD's Statement of Procurement Policy, which states, "Contract award is made to the responsive and responsible bidder offering the lowest price for sealed bid contracts, or offeror whose proposal offers the ***greatest value*** to the HABD, considering ***price***, ***technical*** and ***other factors*** as specified in the solicitation for competitive proposals."  (Doc. 43-1 at 2.)  Determinations of responsibility of the bidder and "best value" are matters within the discretion of HABD.  Certainly the matters that PING complains HABD did not consider are illustrative of its discretion.  (*See* doc. 43 ¶ 6.)

The court finds that PING does not have a constitutionally-protected property right at stake in the award of the contract for the HABD community centers.

24

The court also finds that plaintiff has no constitutionally-protected property right in the "information" requested pursuant to FOIA and the Alabama Open Records Act. PING contends that it "has certain rights to information by virtue of its status as a bidder." (Doc. 43 ¶ 9.) Plaintiff has not cited and the court has not found any reported decision that a "right to information," established by a public disclosure act such as FOIA or Alabama's Open Records Act, is a constitutionally-protected entitlement. At least one circuit has held that a plaintiff does not have any "life, liberty, or property interest in the FOIA materials." *See Trentadue v. Integrity Committee*, 501 F.3d 1215, 1236 (10th Cir. 2007).

The court finds that PING has no constitutionally-protected right to documents requested pursuant to a public disclosure act such as FOIA and Alabama's Open Records Act.

Therefore, based on the foregoing, HABD's Motion to Dismiss PING's § 1983/procedural due process claim is due to be granted.

### B. Constitutionally Inadequate Procedure

Even if the court were to find that PING had a protected property or liberty interest in the community center contracts or the documents requested pursuant to FOIA and/or Alabama's Open Records Act, its Second Amended Complaint fails to allege with the required specificity that "inadequate state procedures exist to remedy [the] alleged procedural deprivation." *See Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). PING's Second Amended Complaint does not describe the actual process it received. It has cited the court

to a number of rules and procedures available to review a bid protest and denial of a document request; however, the Second Amended Complaint contains no allegations that these procedures were inadequate to address PING's claims it was denied constitutionally-protected rights.[13]

In order to state a claim for violation of its right to procedural due process, PING must allege that HABD's "procedures for recovering wrongfully taken [or wrongfully denied] property violated due process." *American Federation of Labor and Congress of Indus. Organizations v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011).

> [B]ecause adequate state remedies were available to provide Plaintiff with the opportunity for a . . . hearing [to reverse the deprivation of a constitutionally-protected interest], he has failed to state a procedural due process claim. In *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994)(en banc), [the Eleventh Circuit] said that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim. *See id.*; *see also Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999); *Harris v. Board of Educ.*, 105 F.3d 591, 596 (11th Cir. 1997). This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation. *See McKinney*, 20 F.3d at 1560; *see also Horton v. Board of County Comm'rs*, 202 F.3d 1297, 1300 (11th Cir.2000).

---

[13]At oral argument, PING's attorney appeared to concede that adequate state remedies existed. He acknowledged that he could have appealed to the state court, but chose not to in order to keep PING's claims together in one court.

Assuming a plaintiff has shown a deprivation of some right protected by the due process clause, [the court] – when determining if a plaintiff has stated a valid procedural due process claim – look[s] to *whether the available state procedures were adequate to correct the alleged procedural deficiencies*.  *See McKinney*, 20 F.3d at 1563; *see also Bell v. City of Demopolis, Alabama*, 86 F.3d 191, 192 (11th Cir. 1996); *Narey v. Dean*, 32 F.3d 1521, 1527-28 (11th Cir. 1994).  *If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process*.  *See McKinney*, 20 F.3d at 1565 ("The fact that [McKinney] failed to avail himself of the full procedures provided by state law . . . does not constitute a sign of their inadequacy."); *Bell*, 86 F.3d at 192; *Narey*, 32 F.3d at 1528.  And, to be adequate, the state procedure need not provide all the relief available under section 1983.  *See McKinney*, 20 F.3d at 1564.  Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due.

*Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000)(emphasis added).

Assuming for a moment that PING has sufficiently alleged a deprivation of constitutionally-protected property rights, its Second Amended Complaint has not alleged that the procedures available to it are inadequate to remedy the deprivation of constitutionally-protected rights.  Without such allegations, PING has failed to state a claim for violation of its right to procedural due process.  *See Horton*, 202 F.3d at 1299-1300 ("The *McKinney* rule is not micro in its focus, but macro.  It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court.  Instead, the *McKinney* rule looks to the existence of an opportunity – to *whether the state courts*, if asked, *generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered*.  If state courts

would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.")

Based on the foregoing, the court finds that plaintiff's procedural due process claim against HABD is due to be dismissed.

### ii. Substantive Due Process

The Supreme Court has held:

> The Due Process Clause guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint. The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests. In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; to bodily integrity, and to abortion. We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment.

> But we have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court.

> Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due--process cases a careful description of the asserted fundamental liberty interest.

28

> Our Nation's history, legal traditions, and practices thus provide the crucial guideposts for responsible decisionmaking that direct and restrain our exposition of the Due Process Clause.  As we stated recently . . ., the Fourteenth Amendment forbids the government to infringe . . . "fundamental" liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.

*Washington v. Glucksberg*, 521 U.S. 702, 719-21 (1997).  Therefore, the substantive due process clause protects only fundamental rights and liberties – that is, rights and liberties created by the Constitution.  *Greenbriar Village, L.L.C. v. City of Mountain Brook*, 345 F.3d 1258, 1262 (11th Cir. 2003)(citations omitted).

Clearly, PING has no "fundamental right" created by the United States Constitution, to the community centers contract and/or to documents requested pursuant to FOIA and/or Alabama's Open Records Act relating to the RFPs.  It has offered no argument or evidence to the contrary in response to defendants' Motions to Dismiss.

Therefore, the court finds that PING's substantive due process claim is due to be dismissed.

### iii.  Equal Protection Clause

PING alleges, "HABD . . . acknowledge[s] all other bid protestors' right to review and appeal bids but denied PING the same right to plaintiff's detriment.  Hence, the defendants are guilty of violating the equal protection clause of the U.S. Constitution as they are treating PING differently than all other persons who lawfully challenge defendants' decisions." (Doc. 43 ¶ 23.)  Also, it contends, "Clearly, this circuit recognizes equal protection claims in bid protests and the plaintiff has adequately pled that it was treated differently than the

other bidders in that PING alleged that HABD . . . only attempted to foreclose PING's exercise of its right to review said bid."  (Doc. 57 at 9.)  PING's "bare allegation" that it was treated differently than others is not sufficient to state a claim based on a violation of the Equal Protection Clause.

"Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint *must* attempt to show in some fashion that these 'other' applicants were situated similarly to the plaintiff."  *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir.1998)(emphasis added), *overruled in non-pertinent part by Iqbal*, 129 S. Ct. 1937 *as stated in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *see also Leib v. Hillsborough County Public Transp. Com'n*,  558 F.3d 1301, 1306-07 (11th Cir. 2009).  "In order to state an equal protection claim, the plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably.  Thus, the identification of these individuals comprised a part of the claim itself."  *Amnesty Intern., USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009)(citing *GJR Investments*, 132 F.3d at 1367-68); *Leib*, 558 F.3d at 1307.

PING has made no effort to identify any similarly-situated entity that HABD treated more favorably during its bid protest and review.[14]   Therefore, its Second Amended Complaint does not state a claim based on violation of the Equal Protection Clause.

Count Three, alleging HABD violated plaintiff's rights under the Equal Protection Clause, is due to be dismissed.

### iv. Arbitrary and Capricious

Under Count Three of its Second Amended Complaint, PING alleges a claim called "Arbitrary and Capricious/Actions Exceeding Scope.   (Doc. 43 at 20.)   It alleges, "Defendants have no discretion regarding whether to entertain a bidder's protest, review and appeal.  Defendants' decision to virtually deny PING the review and appeal option was, therefore, arbitrary and capricious.  Its actions effectively nullifying PING's right to review exceeded the defendants' authority.  As a result, the defendants' actions are clear violations 42 U.S.C. 1983."  (Doc. 43 ¶ 24.)

The law is long and well-established that "Section 1983 . . . does not create any substantive federal rights.  Therefore, the plaintiff must point to a specific federal right that the defendant violated." *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007)(citing *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996)).  Within this claim, PING has not pointed to any specific federal right; it merely cites

---

[14]The court notes that the record does not indicate that PING was treated unfavorably during its bid protest.  However, for purposes of deciding the Motions to Dismiss, the court has assumed unfavorable treatment.

§ 1983.  Clearly, its assertion to the contrary notwithstanding, plaintiff has failed to state a

claim for relief under this claim.

HABD's Motion to Dismiss this claim will be granted.

### v.  Declaratory Judgment Act

In his Second Amended Complaint, PING alleges:

> 25.  The defendants' improper record disclosure practices and bid
> review process have adversely affected the plaintiff by promoting and
> reinforcing biases with respect to the plaintiff's quiet enjoyment and
> fundamental due process rights.  The plaintiff seeks to redress the wrongs
> alleged herein for declaratory relief, other equitable relief, and damages, as
> well as other remedies which the cause of justice shall require.  The plaintiff
> is suffering and will continue to suffer irreparable injury from the defendants'
> unlawful policies and practices unless enjoined by this Court.

> 26.  Furthermore, to the extent that the defendants' argue that they have
> no guidance regarding handling a bid protest and regarding what information
> to make available to protestors, the plaintiff's seeks a declaratory judgment
> declaring the rights of the parties with regard to the bid protest process.

(Doc. 43 ¶¶ 25-26.)  At oral argument, counsel for plaintiff asserted that PING's declaratory

judgment "claim" was a separate and independent cause of action.  It is not.

The Declaratory Judgment Act provides, "In a case of actual controversy within its

jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading,

may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The

Act "does not create any new substantive right but rather creates a procedure for adjudicating

existing rights."  *Walker Western Cas. & Sur. Co. v. Herman*, 405 F.2d 121, 124 (8th Cir.

1968).  "The operation of the Declaratory Judgment Act is procedural only." (quoting

*Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003)(quoting *Aetna Life Ins.*

*Co. v. Haworth*, 300 U.S. 227, 240 (1937))).

> [T]he Act permits a party to apply to a federal court for a declaration of an
> underlying right or relation rather than waiting for the adjudication of such
> rights in a traditional coercive action.   Though it is often said that the Act
> enlarges the range of remedies available in the federal courts,  such language
> refers to the Act's function as a procedural device.  Besides authorizing a
> declaratory judgment, the Declaratory Judgment Act does not create remedies
> otherwise unavailable to the plaintiffs in the anticipated coercive action.

*Id*.  (internal citations and quotations omitted).

The court finds that PING does not have a cause of action under the Declaratory

Judgment Act independent and separate from the other claims asserted in its Second

Amended Complaint.

### 3.  Alabama Open Records Act

HABD contends that "this Court does not have jurisdiction of [PING's Alabama's

Open Records Act] claim because all of PING's claims in this action are due to be dismissed,

leaving no independent jurisdictional basis for PING's Open Records Act claim."[15]  (Doc.

62 at 12.)   The court agrees that this claim should be dismissed pursuant to 28 U.S.C. §

1367(c) in the event all federal claims against HABD are dismissed.

---

[15]The Open Records Act provides, "Every citizen has a right to inspect and take a copy
of any public writing of this state, except as otherwise expressly provided by statute."
Ala.Code § 36-12-40.

Section 1367(c)(3) provides, "The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Because no basis for original federal jurisdiction presently exists, the district court has the discretion to decline to exercise supplemental jurisdiction." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1123 (11th Cir. 2005)(citing 28 U.S.C. § 1367(c); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir.2002)). *see also Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).[16] "[I]f the federal claims are dismissed prior to trial,[the Supreme Court] strongly encourages or even requires dismissal of state claims." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)(quoting *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)(citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

---

[16]The *Baggett* court held:

> Resolution of Plaintiffs' state law claims depends on determinations of state law. State courts, not federal courts, should be the final arbiters of state law. When coupled with the Court's discretion to exercise supplemental jurisdiction under § 1367(c), this Court finds that the state law claims remaining in this action are best resolved by the Georgia courts. This is especially true here where the Court is dismissing Plaintiffs' federal law claim prior to trial. The Court finds that judicial economy, fairness, convenience, and comity dictate having these state law claims decided by the state courts.

*Baggett*, 117 F.3d at 1353 (citing, *inter alia*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Eubanks v. Gerwen*, 40 F.3d 1157 (11th Cir.1994)).

For the reasons set forth herein, it appears unlikely PING will be able to assert any claim against HABD based on federal law. Nevertheless, the court will allow it to try. Therefore, dismissal of Count Two against HABD on the ground that the court has dismissed all federal claims seems premature.

HABD's Motion to Dismiss Count Two will be denied.

## II. MOTION FOR LEAVE TO AMEND COMPLAINT

### A. STANDARD OF REVIEW

"[A] district court has great discretion when deciding whether to grant a motion for leave to amend a complaint following the filing of responsive pleadings." *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1314 (11th Cir. 2002). "This liberal discretion is not abused when the amendment would prejudice the defendant, follows undue delays, or is futile." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999)(citing *Technical Resource Services, Inc. v. Dornier Medical Systems, Inc.*, 134 F.3d 1458, 1463-64 (11th Cir. 1998)). Nevertheless, "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. DISCUSSION

PING has filed a Motion for Leave to amend its Second Amended Complaint to add an appeal of the decision of HUD to deny its bid protest. It claims:

1.  There is currently pending before this Court a claim challenging the Constitutionality and legality of the defendants' bid review process and document release policies.

2.  This Court stayed action pending HUD's review of HABD's denial of the plaintiff's bid protests of RFP 11-03 and 11-09.

3.  HUD rendered a report on [December 22, 2011,] denying the plaintiff's bid protest of 11-09 and 11-03 and upholding HABD's denial of the same.

4.  Hence, this matter is now ripe to proceed on a full review of HUD's and HABD's denial of the plaintiff's bid protests along with the pending review of their bid review and document release procedures.

(Doc. 49.)  PING did not attach its proposed amended complaint to its Motion.

This court's established procedures require parties wishing to amend their pleading to attach the complete and executed amended pleading.  This allows opposing parties the opportunity to object to the Motion to Amend and the court to review the proposed amended pleading before the court allows the amendment.  Because PING has not submitted its proposed amended complaint, its Motion for leave to Amend will be denied.

The court notes that review of the procurement decision at issue is limited under the administrative procedures act [APA].  The Eleventh Circuit has held:

> "In APA actions, we review agency determinations under the 'arbitrary and capricious' standard, which 'provides the reviewing court with very limited discretion to reverse an agency decision.'" *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009)(quoting *City of Oxford v. FAA*, 428 F.3d 1346, 1351 (11th Cir. 2005)).  "The court's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Sierra Club v. Van*

> *Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008)(quotation marks omitted); *see also Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009)(explaining that "[t]he arbitrary and capricious standard is exceedingly deferential" and that this Court is "not authorized to substitute [its] judgment for the agency's as long as [the agency's] conclusions are rational" (quotation marks and citations omitted)).

*Leal v. Secretary, U.S. Department of Health and Human Services*, 620 F.3d 1280, 1282 (11th Cir. 2010).  The court has reviewed HUD's report and, considering PING's allegations of improper conduct, HUD's decision appears rational.

Also, HABD may not be a proper party to its appeal of HUD's decision.  At oral argument PING cited the court to a recent Eleventh Circuit opinion, *Citizens for Smart Growth v. Secretary of Department of Transportation*, No. 11-11056, 2012 WL 360556 (11th Cir. Feb. 6, 2012.)  In this decision, the Eleventh Circuit considered the "complex legal question" of whether it had "jurisdiction to enjoin a state official in an action based on the APA." *Id*. at *2.  It found, "Other circuits that have addressed this question have focused on whether a highway project constitutes a major federal action or whether the state and federal projects are sufficiently interrelated." *Id*. (citing *Southwest Williamson County Community Ass'n v. Slater*, 243 F.3d 270, 277 (6th Cir. 2001); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992)).  Noting "that the APA does not apply to state agencies," the Eleventh Circuit held that it could exercise jurisdiction over the Florida Department of Transportation [FDOT] because the administrative record demonstrated "FDOT's substantial role" in the project and the United States considered the FDOT to be "a party working in

tandem with federal agencies." *Id*. at *3 (internal quotations omitted).  The Eleventh Circuit limited its holding to the circumstances of the case.  *Id*.

Given the differences between the relationship between the state and federal entities in *Citizens for Smart Growth* and HUD and HABD, the court recommends that PING carefully consider the argument and legal citations in HABD's Reply in Support of its Renewed Motion to Dismiss, (doc. 62 at 2), before naming HABD as a party to an appeal of HUD's decision.

Finally, the court notes that PING may lack standing to bring an appeal of HUD's decision due to the passage of time and HABD's decision to assume operation of the community centers beginning March 1, 2012, (*see* doc. 61-1).  Under the circumstances, the court may be unable to redress PING's alleged injuries, such that it lacks standing.  *See Atlanta Gas Light Co. v. F.E.R.C.*, 140 F.3d 1392, 1402 (11th Cir. 1998); *see also Gull Airborne Instruments, Inc. v. Weinberger*,  694 F.2d 838, 846 (D.C. Cir. 1982)(If contract "fully or satisfactorily performed," unsuccessful bidder's request for injunctive relief may be moot)(citing, *inter alia*, *Graves v. Walton County Board of Education*, 686 F.2d 1135, 1136-37 (11th Cir. 1982)).

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff has failed to state a claim for relief against defendant HUD and failed to state a federal claim for relief against HABD, but has a state-law claim under Alabama's Open Records Act.  Also, plaintiff

PING's Notice of Appeal of HUD's and HABD's Denial of Plaintiff's 11-03 and 11-09 Bid Protests and Motion for Leave to Amend Complaint to Add Formal Bid Protest Review will be denied based on PING's failure to attach its proposed amended complaint. An Order granting defendant HUD's Motion to Dismiss, (doc. 56); granting in part and denying in part defendant HABD's Motion to Dismiss, (Doc. 53); and denying plaintiff PING's Notice of Appeal of HUD's and HABD's Denial of Plaintiff's 11-03 and 11-09 Bid Protests and Motion for Leave to Amend Complaint to Add Formal Bid Protest Review, (doc. 49), will be entered contemporaneously with this Memorandum Opinion.

      **DONE**, this 21st day of February, 2012.


                  *Sharon Lovelace Blackburn*
                  SHARON  LOVELACE  BLACKBURN
                  CHIEF UNITED STATES DISTRICT JUDGE